## Ann Jane Fox
### v.
## Wilber S. Peck et al.

*Fraudulent Conveyances—Bill to Set Aside in Interest of Creditors—Evidence Sufficient to Establish Fraud—Rights of Innocent Parties Protected—Homestead.*

1. Upon a bill filed by judgment creditors to set aside a series of conveyances by which the legal title to a piece of real estate in which their judgment debtor possessed an equity was attempted to be vested in the wife of the debtor, this court holds that the evidence was sufficient to establish the fact of fraud, and that the conveyances should be set aside in the interests of the creditors; but that an incumbrance, placed upon the property by the wife while her record title was apparently good, and which had been purchased by an innocent party, was to be first satisfied out of the proceeds of the sale of the premises.

2. The fact that the decree of the court below found a homestead estate in the wife instead of the husband, can not be complained of by any one except the husband.

[Opinion filed December 12, 1892.]

Appeal from the Circuit Court of Will County; the Hon. Dorrance Dibell, Judge, presiding.

Mr. George S. House, for appellant.

Mr. J. K. Wilson, for appellees.

MR. JUSTICE CARTWRIGHT. Appellees, who constituted the firm of W. S. Peck, Bro. & Co., filed the original bill in this case to set aside a transaction whereby the legal title to certain premises in Joliet, Illinois, was vested in appellant, Ann Jane Fox. The bill alleged that appellees had acquired a lien upon an equitable interest of Osmond Fox in said premises, and charged that such equitable interest had been fraudulently converted into the legal estate in Ann Jane Fox, wife of said Osmond Fox. The executors of Otis Hardy, deceased, were admitted, on their petition, as defendants, and filed a cross-bill to foreclose a trust deed on said premises, executed by Ann Jane Fox, claiming priority to other liens as *bona fide* holders of the notes secured by the trust deed. The cause was heard on the issues made under the original bill and cross-bill, upon the pleadings and proofs. The court found the transaction fraudulent as alleged in the original bill, and also granted relief to the executors of Hardy, complainants in the cross-bill, according to the prayer of said cross-bill. It was decreed that the premises should be sold, and upon sale being made, the amount due on the notes secured by the trust deed and for taxes and insurance, aggregating $5,540.30 with costs and $100 solicitor's fee, should be first paid to the executors of Hardy, and next $1,000 should be paid to Ann Jane Fox for homestead, if the homestead should not be assigned, and next the judgments of complainants in the original bill should be paid. The case of Wilber S. Peck et al. v. Nichols D. Dyer et al., submitted at the present term, is an appeal from the decree granting relief on the cross-bill. This appeal brings up for review the action of the court on the original bill.

The facts established by the evidence are as follows: On January 24, 1878, Osmond Fox contracted with William A. Strong, Jr., and Charlotte A. Strong, for the purchase from them of the premises in question, for $2,400, payable in two and three years in installments of $1,200 each, evidenced by promissory notes, drawing interest at eight per cent, payable annually. The contract was in writing under seal, and pro-

vided for forfeiture for non-payment at the election of the vendors, and was duly recorded. Osmond Fox went into possession of the premises under the contract, and erected a dwelling house thereon at a cost of $11,000, and has ever since lived there with his family. On January 12, 1886, complainants in the original bill obtained judgments in the Circuit Court of Cook County, Illinois, against Osmond Fox, amounting to $4,718.58, and sued out executions thereon, which were, on January 13, 1886, levied on the interest of said Osmond Fox in said premises, and certificates of levy were filed in compliance with law at 12:40 P. M. on the day of such levies. After the filing of the certificates of levy and on the same day, the First National Bank of Joliet recovered judgment against Osmond Fox for $2,525 and costs, and other judgments against him were entered on said day, but all such judgments were junior liens to those obtained by said levies, by virtue of the executions from Cook County. Osmond Fox paid the interest from time to time on the notes given for the purchase of the premises. The interest was paid by him in full to January 24, 1886, but he paid no part of the principal. On April 17, 1886, the Strongs declared the contract of purchase forfeited for non-payment, and filed for record a declaration of such forfeiture, and on the same day conveyed the premises by warranty deed to Frederick W. Woodruff, who was president of said First National Bank of Joliet. The consideration expressed in that deed was $2,500. On the same day of the conveyance to said Frederick W. Woodruff, he conveyed the premises to Ann Jane Fox, for the expressed consideration of $5,000, by special warranty deed, whereby he warranted against his own acts. The only consideration for the deed to Ann Jane Fox was the execution by her of her five promissory notes for $1,000 each, payable to said Woodruff at said bank, and which notes she secured by trust deed on said premises to Edward C. Hager, who was attorney for said bank. These conveyances were duly recorded. At the time of the declaration of forfeiture the premises were worth all that they had cost, and more, so that at the time of such forfeiture and

conveyances, the equitable interest of Osmond Fox therein was worth at least $11,000, the cost of the house. A paper was offered in evidence purporting to extend the time of payment of the principal sum under the contract of purchase, but the paper was without date and was never recorded. The principal became due in January, 1880 and 1881, and the paper purported to extend it from January 24, 1885, to January 24, 1886.

Counsel for appellant insists that the foregoing facts, clearly proven, are merely matters of suspicion; but we think that when the relations of the parties to the transaction are duly considered in connection with the facts, especially such as the sudden development of a disposition on the part of the Strongs to forfeit a contract when they were secure and receiving a high rate of interest, the conveyance to the bank president for about the amount due the Strongs, the sudden appreciation of value on the same day in the hands of the bank president, by about the amount of the bank judgment, and the conveyance by special warranty deed to Fox's wife for about the aggregate of those two claims, when the property was worth three times the consideration, the circumstances are well calculated to produce a conviction in accordance with the finding of the court. Osmond Fox accepted without objection a declaration of forfeiture, which, in the ordinary course of things, would make him and his family immediately homeless, and he testified that when he accepted it, he had no idea that the property would be transferred to his wife, and that he was nearly crazy with financial troubles. It is more than likely, that if he did not know definitely the precise course that matters would take, he was trusting to some one less guileless and more rational than he, and knew that what would be done would be in his interest.

Without discussing all the facts, we will content ourselves with saying that we are satisfied that the court was right in the conclusion that the transaction was fraudulent as to creditors. But it is contended that inasmuch as the lien secured by appellees extended only to the property rights of Osmond Fox, fixed by the contract, and which must be

Fox v. Peck.

worked out through him, and as his estate was equitable in premises to which the Strongs held the legal title, and such equitable estate was liable to be defeated and destroyed at the option of the Strongs, and was so defeated and destroyed under a legal right to do the act, therefore the act can not be further inquired into.   It is said that when a legal right to do an act appears, the law deals with the ascertained right, and judicial inquiry ends.   Whether that is so or not, there has been in this case no attempt to interfere with the Strongs, or with their legal rights.   They received their pay and are making no complaint.   All parties recognized the claim for purchase money, whatever form it may have taken, or whoever held it, as a first lien.   The original bill was designed to subject the property to the payment of a lien existing before the fraudulent conveyances upon an equitable estate in the property, which had been fraudulently transferred to Fox's wife.   The question raised was not whether the equitable estate of Osmond Fox could be defeated by the Strongs, and the whole title vested in them in good faith, but whether the valuable interest of Osmond Fox in the property could be given to his wife as against creditors when he was insolvent.   The Strongs did not ask or receive any pay for the equitable interest.   The bank president only levied tribute on the equitable estate to the extent of the bank judgment, and the object of the whole scheme was to defeat other creditors.   No reason appears why the transaction was not a proper subject of investigation.   The court finding on the proof under the cross-bill that the rights of an innocent party had intervened, allowed the conveyances to stand for the protection of the innocent, and subjected the property to the payment of the liens.   We think the decree in these particulars was right.   It is objected to that method that the property might not bring the amount due on the contract, and therefore the amount so due should have been paid or tendered to the Strongs, or those claiming under them.   The Strongs already had the money due them, and the amount so due had been converted into and had assumed the character of a lien under the trust deed, to

which the holders looked for security and payment, and they have made no objection to the decree, but are content to rely on that security.

It is also objected that the homestead should have been decreed in Osmond Fox instead of Ann Jane Fox in case the transaction was found invalid. If that was an error it was an error against Osmond Fox, and he has not appealed or assigned errors, and it will not be considered.

The decree on the original bill is not, we think, subject to any objection made, and it will be affirmed.

*Decree affirmed.*